## UNION TRUST COMPANY OF MARYLAND *vs.* STATE OF MARYLAND.

*Taxation: laws liberally construed. State taxes. Corporations; capital stock tax; authorized issue; reduction of—. Tax Commissioner and Comptroller; duties—; "levying" taxes. Statutes: construction; time; when directory merely.*

Laws for the assessment and collection of general taxes are construed with the utmost liberality; the construction is not to be a critical one, with a view to defeat the enactment, but a liberal interpretation to uphold it, if possible.        p. 372

The acts of a public officer in the discharge of his duty are entitled to the presumption of having been correctly performed.        p. 372

It is within the province of the legislature itself to levy a tax directly, and the fact that it may delegate the power, either in whole or in part, does not destroy the validity of the act.        p. 374

The word "levy" as applied to taxes may mean to raise and exact by authority of government, or to determine by a vote the amount of tax to be raised.        p. 373

Chapter 404 of the Acts of 1906 fixes the amount per hundred to be imposed by way of taxation and itself constitutes a legislative levy of the tax, but that levy needs to be completed by its entry upon the books of the State Comptroller; the act vests no power in the Comptroller to determine the rate of taxes, nor does it give him any function to perform in the way of valuing stock for the purpose of taxation. p. 373

The functions of the Comptroller under the act are purely ministerial, and are fully performed when he enters upon his books the number of shares of stock liable to taxation, the corporation the stock of which was taxed, the rate of taxation, and the amount of the tax. p. 373

The similar or identical duties imposed upon the State Tax Commissioner by section 150 of Article 81 of the Code of Public General Laws, while superfluous, do not invalidate the tax; and to a suit by the State against a corporation for taxes due under the provisions of the Act of 1906, it is no defence that such levy was so made by the Tax Commissioner and not by the Comptroller. pp. 372, 374

The tax on the capital stock of a corporation is not a tax upon the corporation, but upon the owners of the stock; the corporation under the law is made merely the medium through which the tax is collected p. 375

In the construction of statutes they are, in respect to time, to be regarded as directory merely, unless from the nature of the act to be performed, or the language employed it plainly appears that the designation of time was intended as a limitation of power. p. 376

Article 81, section 150 of the Code, providing that the Tax Commissioner shall annually by the 15th of May assess for taxation purposes the shares of corporations, as therein provided, as of the 1st day of January preceding and certify the same to the Comptroller, does not require that the certification shall be in all respects completed by the date named; and where the State Tax Commissioner certified to the Comptroller such a valuation on the 17th day of May, it was held that the delay did not invalidate his act. pp. 375-376

For the purpose of the taxation of the capital stock of a corporation, the 1st of January of each calendar year is the fixed time with regard to which all elements are to be reported, considered and established, conclusive alike upon the State and the corporation.                    p. 377

This applies as well to the *quantum* of the stock; and where a corporation reduced its capital stock in February, it was held to be liable for taxation upon the amount of its capital stock as of the 1st of January preceding.                    p. 377

Where the corporation in such a case did not withhold from the stockholders the tax due on the shares of their stock that were to be retired, it was held that the corporation was itself liable for the taxes due the State upon such shares.

p. 378

Where a corporation has never issued but part of its authorized capital stock only the stock actually issued is liable to taxation.                    p. 378

*Decided June 24th, 1911.*

Appeal from the Superior Court of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER and STOCKBRIDGE, JJ.

*J. Wallace Bryan* and *Charles E. Fink* (with whom were *Lemmon* and *Clotworthy* on the brief), for the appellant.

*James M. Munroe* (with whom were Isaac Lobe Straus, *Attorney-General,* and *John E. Semmes, Jr.,* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This is a suit brought in the name of the State of Maryland, in accordance with the provisions of section 152 of Article 81 of the Code of Public General Laws, against the Union Trust Company of Maryland to recover the amount

of the State tax on 20,000 shares of the capital stock of that corporation for the year 1907.

The material facts are as follows: On January 11th, 1907, the Union Trust Company of Maryland by Richard D. Sellman, its treasurer, filed with the State Tax Commissioner the report required to be made by section 150 of Article 81, and on January 22nd of the same year, the Tax Commissioner placed the valuation upon the stock of $49.50 per share, gross, or with the deduction claimed by the Company and allowed by the Tax Commissioner, of $17.66 per share net, as the valuation of the stock of the company for the purposes of taxation. On some date between January 11th and 22nd, entries were made in a book in the State Tax Commissioner's office, known as the book of division of stock, and in this was set out the number of shares liable to taxation in Baltimore City and in each of the counties. And on or about the same date the Appeal Tax Court of Baltimore City and the County Commissioners in the several counties were notified of the valuation placed upon the shares of the stock of this corporation. In a letter from the Tax Commissioner to one of the counsel of the company appears the statement, that the levy of the tax was made by him, the State Tax Commissioner, and certified to the Comptroller on the 17th of May, 1907, and by the certificate of the State Tax Commissioner it appears that on the 17th May, 1907, the Tax Commissioner certified to the Comptroller the assessment of this stock. From the valuation of the State Tax Commissioner and appeal was taken under the provisions of section 162 of Article 81, and the valuation of the State Tax Commissioner confirmed.

On February 25th, 1907, the Union Trust Company reduced its outstanding stock from twenty thousand to ten thousand shares, and paid off, liquidated and retired ten thousand shares, at a valuation of $66 per share, and on the 16th April, 1907, notified the State Tax Commissioner of such reduction in its capital stock.

The record in this case shows several demurrers, and at the trial the plaintiff offered six, and the defendant twenty-two prayers, of which the Court granted the plaintiff's first, second, fifth and sixth, and refused all of the other prayers. The questions raised by the demurrers were all substantially raised under one or another of the prayers.

In the view which the Court takes of this case, it is unnecessary to consider in detail the several rulings on the demurrers and upon the prayers, as they all involve one or another of four propositions of law, viz: 1st, That the taxes upon this stock were levied by the State Tax Commissioner, and not by the Comptroller of the State, and the levy was therefore void; 2nd, That the assessment is void because it was an assessment made against the company and not against the owners of the stock; 3rd, Because it was not certified by the State Tax Commissioner to the Comptroller until May 17th, 1907, two days after the date named in the statute; and 4th, Because at most, the State can recover taxes upon only ten thousand of the twenty thousand shares of stock which were issued by the company.

It is proper to say *in limine,* that laws for the assessment and collection of general taxes are construed with the utmost liberality; *Turpin* v. *Lemmon,* 187 U. S. 58; that the construction is not to be a critical one with a view to defeat the enactment, but a liberal interpretation so as to uphold it, if possible; McSHERRY, C. J., in *Monticello Co.* v. *Baltimore City,* 90 Md. 416; *Am. Coal Co.* v. *Co. Commrs.,* 59 Md. 185; and no authority is needed for the proposition that the acts of a public officer in the discharge of his duties are entitled to the presumption of having been correctly performed.

1st. By the provisions of section 150 of Article 81, it is made the duty of the State Tax Commissioner to make the levy upon shares of stock of corporations as of the first day of January preceding, and the contention of the Trust Company in the present case is, that that was what was done with regard to this stock, although by Chapter 404 of the

Acts of 1906, the duty of levying the State taxes was imposed upon the Comptroller.

In passing, it is to be observed that the Act of 1906 was not in terms an amendment of section 150, but of section 22 of Article 81, and, therefore, it may be claimed that there were two sections of the Code, each of which gave the authority to levy the tax, but gave it to different officials. To this objection the answer is clear and complete. In the first place some confusion arises out of the use of the word "levy." "The word 'levy' has different meanings according to the object to which it is applied. As applied to taxes it sometimes means to raise and exact by authority of government or to determine by vote the amount of tax to be raised. It is in this sense that towns and cities levy taxes, in other cases it is used with reference to the mere ministerial or executive act of entering them on the tax book and collecting them." 5 *Words and Phrases,* page 4101, citing *State* v. *Lakeside Land Co.,* 71 Minn. 283; see also *So. R. W.* v. *Kay,* 62 So. C. 228.

The Act of 1906, Chapter 404, in terms fixed the amount per hundred dollars to be imposed by way of tax. This of itself constituted a legislative levy of the tax, but that levy needed to complete it the entry upon the book of the State Comptroller. The Act of 1906 vested no power in the Comptroller to determine the amount of rate of the tax, neither did it give him any function to perform in the way of valuing the stock, that is, assessing or determining the value of it for purposes of taxation. The function of the Comptroller under the Act of 1906, was, therefore, a purely ministerial act, and was fully performed when he entered upon his books the number of shares of stock liable to taxation, the corporation the stock of which was taxed, the rate of taxation, and extended the amount of the tax. This apparently was also done by the State Tax Commissioner under the authority of section 150, but it was none the less done by the State Comptroller when he made his entries, and the fact that similar

action was taken by two separate officials, identical in its nature, and each acting under express provisions of law, though one or the other of them may have been superfluous, can not be regarded as invalidating the tax. *Clark Dist. Co. v. Cumberland,* 95 Md. 476. Nor can the fact, as in this case, that the Legislature has made the levy itself be a ground of objection. Such a power is distinctly within the province of the Legislature, and the fact that it may be delegated, either in whole or in part, does not destroy the validity of the act, but such delegation may be, and sometimes is, made because the power can in such manner be more conveniently exercised; *State* v. *Mayhew,* 2 Gill, 490.

2nd. The second ground of objection is the assumption that the tax sought to be collected in this suit, is a tax levied upon the company, and not one where the stock was valued and assessed to the owners thereof in the county or city in which the owners respectively resided. Upon this branch of the case it is to be noted, first, that there is no requirement exacted by section 150 of Article 81, that the official of the corporation shall return to the State Tax Commissioner a list of the stockholders therein, only of the number of shares of capital stock. The requirement of the list of stockholders appears in section 156, and such list is to be made in an entirely separate return, required from the officers of a corporation, to the Appeal Tax Court of Baltimore City, the County Commissioners of a county, or the city clerk of an incorporated town or village. Most of the cases which have heretofore been before this Court have been cases where it was sought to recover county or municipal taxes, and in one or two of them, with the State taxes added. In the present case there is no attempt to require payment by the Trust Company of any local or municipal taxes, only of the taxes due to the State of Maryland, and for that reason the corporation being created by law the agent of the State for the collection of taxes upon the shares of its capital stock, it was sufficient as between the State's officers and those from whom

the tax was due, for the State to look solely to the corporation, but this is very far from being a tax upon the corporation. It has been repeatedly held by this Court that the tax upon the capital stock is not a tax upon the corporation, but upon the owners of that stock, the corporation being made the medium through which the tax is collected. This is in strict accord and analogy with the case of the *Monticello Co.* v. *Baltimore City,* 90 Md. 416, in which McSHERRY, C. J., *in* speaking of the distilled spirits there sought to be taxed in the hands of the warehouseman, says: "Though the language employed, like that used in many other assessment laws, if read literally would indicate an intention to impose the tax on the property and not on the owner of it, that is not its meaning when considered in connection with the settled policy of Maryland, as announced in the Declaration of Rights. We hold, then, that the tax is upon the owner of the spirits and not specifically upon the spirits." See also *Am. Coal Co.* v. *Co. Comrs. Allegany Co.,* 59 Md. 185.

3rd. By section 150 of Article 81, it is provided that, "The Commissioners shall annually by the fifteenth day of May in each year, assess the shares as hereinafter provided, as of the first day of January preceding," and this valuation he certifies to the Comptroller. The objection now made is, that the assessment is void, not because it was not made before the fifteenth day of May, but because it was not certified to the Comptroller until the 17th of May. But the statute nowhere says, that the certification shall be in all respects completed by the date named, nor is any penalty imposed for a failure to complete within the time. So far as anything appears from the record, the valuation or assessment of this stock for the purposes of taxation was made not later than the 22nd of January, and if it be assumed that the certification to the Comptroller was required to be before the 15th of May, and that it was not in fact done until two days later, in view of the language of the statute, it would come directly within the ruling as announced by JUDGE ALVEY, *in*

*State* v. *County Commissioners of Baltimore County,* 29 Md. 522, that "in the construction of statutes they are, in respect to time, to be regarded as directory merely, unless from the nature of the act to be performed, or the language employed in the statute it plainly appears that the designation of time was intended as·a limitation of power of the officer." And such does not appear in this case.

4th. The fourth ground of objection is that even if the tax be not void *in toto* for any of the reasons already mentioned, that nevertheless inasmuch as the capital stock of the Trust Company had been reduced from twenty thousand to ten thousand shares in the month of February, and before the time when the levy was or might be supposed to have been completed, that the tax can now be collected from the Trust Company, only upon the ten thousand shares of reduced capital stock. By the agreed statement of facts, the outstanding capital stock on the first day of January, 1907, was twenty thousand shares; the reduction took place on February 25th, and the shareholders of the stock so retired were paid $66 per share out of the capital and accumulated surplus of the company. There is no question of the *bona fides* of this reduction, and that it was not done for any purpose of evading taxation. The sole question is whether the company is to pay as collector for the State upon the number of shares as they were at the beginning of the year, or as they were after the action of February 25th had been taken. As the law formerly stood, there was quite a range of time within which a corporation might select such date as it saw fit for making up the statement and its return to the State Tax Commissioner for the purpose of the valuation of its capital stock. That fact invited and resulted in considerable judgling of figures, and tended to produce inequality in the administration of the law. Accordingly, the present statute was passed, by which the first day of January of each calendar year was fixed at the time, as of which all such returns· were to be made, and the valuation of the stock

determined, and such legislation has been repeatedly sustained in this Court. *Hopkins* v. *Van Wyck*, 80 Md. 15; *Skinner Dry Dock Co.* v. *M. & C. C. of Baltimore*, 96 Md. 43. It must be regarded, therefore, as settled in this State that for the purpose of the taxation of the capital stock of a corporation, January first is to be taken as the date with regard to which all elements are to be reported, considered and established, conclusive alike upon the State and the corporation. The same rule has been upheld in this Court with regard to local taxation in the City of Baltimore, both in the *Skinner case* (*supra*) and in the case of *Hamburger* v. *M. & C. C. of Baltimore*, 106 Md. 479. But the suggestion is now made that while conclusive in some respects, it is not conclusive as to the *quantum* of stock. This is a distinction in which the Court can not agree; any other rule than some fixed, definite date could only result in endless confusion, and no case better illustrates this than the case at bar. Since taxation upon the capital stock of a corporation is a taxation upon the owner, and not upon the corporation, it then becomes necessary in order to make a proper apportionment of the tax between the city and the several counties, to show the residence of each stockholder. When a reduction of stock takes place, it may be a uniform, proportional reduction of each stockholder, or it may be a surrender of all the shares of one stockholder, and none by another, or any variation between these two extremes. This, then, becomes as important an element as does the fact of reduction itself, and any departure from the date fixed by the statute would result in a virtual setting aside of the statute by the Court, and the creation of confusion. The statute, as it stands, operates impartially. If at the meeting of the stockholders of the Trust Company on February 25th, there had been an increase instead of a reduction of the capital stock, the amount of that increase, since it was not in existence on January 1st, would not and could not have been liable to taxation during the year of 1907. It was urged in argument and upon the

brief, that this stock should be treated as if it had never been issued. If that had been the case, it would not have been liable to taxation. This company as originally incor· porated was authorized ·to issue forty thousand shares of stock; it did in fact issue but twenty thousand, and twenty thousand was the total number upon which it had paid taxes, and that action was right and proper. *Consumers' Ice. Co. v. State,* 82 Md. 132. By the report of the treasurer of the company, there was issued and outstanding on the first day of January, 1907, twenty thousand shares of its capital stock. The duty of the State Tax Commissioner with regard to it was perfectly plain. He was to value the twenty thousand shares, not a portion of them; that necessarily follows from the language of this Court in *Skinner case (supra),* and also *M. & C. C. of Ballimore* v. *Chester S. S. Co.,* 103 Md. 400; where this Court in effect said, that the only information which the Tax Commissioner could have in an authentic way, is as of January 1st, and that his certification must necessarily have reference to that date. But it is further objected that since the company has paid off .ten thousand shares of its stock, if the tax be now collected, it will amount either to levying the tax upon the present holders of the stock, or levying it directly upon the company. The answer to this is perfectly simple: The Trust Company knew on February 25th that it had made a return to the State Tax Commissioner of twenty thousand shares of stock; it further knew that that stock was subject to taxation, and that the company was the agent of the State for collecting that tax; it was, therefore, its plain duty when it paid off the stockholders and retired ten thousand· shares to have retained from each one a sufficient amount to have paid the tax, and it can not now set up its own voluntary act of the payment-out of the money, as a ground to defeat a suit upon the part of the State, brought in accordance with the Statute, and based upon the sworn return of the corporation. Much reliance was placed by the appellant upon the case of the

*State* v. *Safe Deposit Co.,* 86 Md. 581; but it is difficult to discover any analogy between that case and the present. There the suit was not against the corporation which was by operation of law the agent of the State for the collection of the tax due by the stockholders; but was against the trustee of an insolvent corporation for a preference in the distribution of the assets of the insolvent corporation, and the question there presented, was not the liability of the State's agent to the State, but *when* did the taxes on the stock of the insolvent incorporation become due, so that the claim of the State might properly be considered a lien against the fund arising from the assets of the insolvent, and as such entitled to preference; and that was substantially the same question which was involved in the cases of *Boston* v. *Beal,* 51 Fed. 306, and *Stapyton* v. *Thaggard,* 91 Fed. 93, and in both of which the determination of the Court was in line with the decision of this Court in the case of the City against the Safe Deposit Company (*supra*).

No prejudicial error is, therefore, perceived in the rulings of the lower Court, and the judgment appealed from will be affirmed.

> *Judgment affirmed, costs to be paid by the appellant.*